IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08–cv–02182–PAB–KMT

JEREMY J. LOYD,

      Plaintiff,

v.

PAUL PRENDERGAST, individually and in his official capacity as SOMB Board Chair,
PEGGY HEIL, individually and in her official capacity as Chief of Rehabilitation Programs,
BURL McCULLAR, individually and in his official capacity as Sex Offender Treatment
Program Manager,
SAMUEL DUNLAP, individually and in his official capacity as SOTMP Phase II Program
Coordinator,
CHRISTINE TYLER, individually and in her official capacity as SOTMP Therapist,
AMICH & JENKS, INC., a Colorado corporation,
JEFFREY JENKS, individually and in his official capacity as Polygrapher and Partner, Amich &
Jenks, Inc.,
TOM SHEELY, individually and in his official capacity as Polygrapher, Amich & Jenks, Inc.,
and
COREY SCHMIDT, individually and in his official capacity as Polygrapher, Amich & Jenks,
Inc.,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This case involves claims that Defendants violated Plaintiff's rights under the Fifth and

Fourteenth Amendments.  Jurisdiction is premised upon 42 U.S.C. § 1983 (2008).  This matter is

before the court on the "Motion to Dismiss Defendants Amich & Jenks, Inc., Jeffrey Jenks, Tom

Sheely and Corey Schmidt" ([Doc. No. 28] [filed March 5, 2009]).[1]  Plaintiff did not file a

Response.  This motion is ripe for review and recommendation.

### STATEMENT OF FACTS

The following facts are taken from Plaintiff's Prisoner Complaint [Doc. No. 3] and the

parties' submissions with respect to this Recommendation.  Plaintiff is an inmate in the custody

of the Colorado Department of Corrections (hereinafter "CDOC").  (Compl. at 5.)  In 2002,

Plaintiff claims he pleaded guilty to sexual assault on a child and was sentenced to ten years to

life imprisonment.  (*Id.*)  At some point Plaintiff was apparently allowed probation, but after his

probation was revoked in May 2003, Plaintiff states that he was sentenced to a minimum

sentence of two years to lifetime supervision.  (*Id.*; *see also* Ex. E at 1.)  Plaintiff claims that in

2006 he "signed a 'Phase II T.C. Contract' in order to participate in the Sex Offender Treatment

and Monitoring Program (hereinafter "SOTMP") Therapeutic Community . . . located at

Arrowhead Correctional Center in Cañon City, Colorado."  (*Id.* at 5; *see* Ex. D.)  Plaintiff claims

the Colorado Sex Offender Management Board (hereinafter "SOMB") sets forth the criteria used

by SOTMP staff to determine whether an inmate has "successfully progressed" through the

treatment program.  This determination is a factor the SOTMP staff uses in assessing whether to

recommend the inmate for parole.  (*Id.* at 8–9.)  According to the "Criteria for Successful

Progress in Treatment in Prison," sex offenders are required to complete non-deceptive

---

[1] Since the bulk of Plaintiff's factual allegations against Defendants Amich & Jenks, Inc., Jenks, Sheely, and Schmidt are stated against them collectively, these defendants shall be referred to collectively as the "Polygraph Defendants" where appropriate.

polygraph assessments in order to receive a positive recommendation for parole. (*Id.* at 7; *see* Ex. B.) Moreover, Plaintiff claims that upon entering SOTMP he "waive[d] all his rights to confidentiality with regard to any criminal behavior he might disclose during treatment." (*Id.*; *see* Ex. D.) Plaintiff states that "DOC employees are required to report [sexual offenses disclosed in response to polygraph examiners' questions] . . . to the proper authorities under Colorado law." (*Id.* at 15.)

Plaintiff claims that as part of the SOTMP, he was required to submit to polygraph examinations. (*Id.* at 5–6; Ex. D at 2.) Plaintiff states that these examinations were administered by employees of Defendant Amich & Jenks, Inc., a Colorado corporation which arranged to have polygraph examinations of inmates conducted during the time period relevant to this litigation under contract with the State of Colorado. (*Id.* at 3.) Plaintiff claims that he submitted to his first polygraph examination on December 21, 2007, administered by Defendant Corey Schmidt (hereinafter "Schmidt"). (*Id.* at 5.) Plaintiff claims that between January 2008 and May 2008, he submitted to three more polygraph examinations regarding a claim that he had exposed himself to another inmate, a crime for which plaintiff had not been charged. (*Id.* at 3–6.) Plaintiff states that Defendant Tom Sheely (hereinafter "Sheely") administered polygraph examinations on January 10, 2008 and May 16, 2008, and that Defendant Jeffrey Jenks (hereinafter "Jenks") administered a March 20, 2008 polygraph examination. (*Id.* at 6.) Plaintiff claims that Defendants Jenks, Sheely and Schmidt "attempted to elicit a confession from Plaintiff that he had exposed himself to another inmate," but Plaintiff refused to so admit. (*Id.* at 15; Ex. C at 2.)

According to the Plaintiff, on January 4, 2008, the SOTMP staff provided Plaintiff with a letter notifying him that his "general emotional responses" to questions during the December 2007 polygraph examination regarding the allegation that he had exposed himself to another inmate, were "indicative of deception." (*Id.*, Ex. C at 1–2.) As a result, "the SOTMP staff placed him [Plaintiff] on "Notice" status in treatment" (*Id.* at 6) because the "deceptive" results indicated that he was "not making sufficient progress in treatment." (*Id.*, Ex. C at 1-2.) Plaintiff states he was informed that the "notice period [would] be reviewed in 30 days [or] . . . continue until [he chose] to be honest and clear up [his] polygraph." (*Id.*) Plaintiff claims that SOTMP staff explained that placement on "Notice" status had the following consequences: loss of all privileges, a recommendation that he lose two days of earned time per calendar month, a "G.P. Ban," placement in a support team, ineligibility for a work bonus, a requirement that he contact his "support network" to inform them of his lack of progress in treatment, the loss of appliance privileges, a requirement that he request a "Big Brother" for support while on "Notice" status, ineligibility for a positive recommendation for parole or community corrections for six months after being removed from "Notice" status, and community service requirement of two hours per month. (*Id.* at 2.) SOTMP staff allegedly warned Plaintiff that he faced the possibility of suspension, and eventual termination from the program if he failed to make sufficient progress in clearing up his polygraph examination results. (*Id.*, Ex. C at 1–2.) Plaintiff also claims that his appearance before the parole board in April 2008 was set back 60 days, and subsequently deferred another ten months because he was placed on "Notice" status. (*Id.* at 9; *see also* Ex. E.) Plaintiff claims that another consequence of being placed on "Notice" status was that he faced

4

"the threat of indefinite parole ineligibility" if he continued to refuse to disclose incriminating information about the exposure incident during his polygraph examinations. (*Id.*)

Plaintiff claims that the Polygraph Defendants administered "control question technique polygraph[s]," which Plaintiff concludes, without factual support, are "unreliable [and] highly prejudicial." (*Id.* at 10–11.) Plaintiff claims that the "[Polygraph Defendants] refuse[d] to allow [him] to examine [his] own polygraph results." (*Id.*) He also claims that he was not allowed to "present the findings of an independent polygrapher."[2] (*Id.* at 9.) Plaintiff relies on another case from this District, *Beebe v. Stommel,* 02–cv–01993–WYD–BNB, *Findings of Fact and Conclusions of Law* (Doc. # 163, issued November 13, 2006), for the proposition that his placement on "Notice" status effectively made him permanently ineligible for parole which violates several of his Constitutional rights. (*Id.* at 7–9, 13-16.) Plaintiff claims that his placement on "Notice" status, an action undisputedly taken by persons other than the Defendant polygraphers, without allowing him to examine his Amich & Jenks polygraph results and to present his own independent polygraph test results constitutes a violation of his procedural due process rights under the Fourteenth Amendment. (*Id.* at 7–9.) Plaintiff alleges that the deprivation of his parole eligibility based solely on a conclusion that his polygraph results showed deception constitutes a violation of his substantive due process rights under the Fourteenth Amendment. (*Id.* at 2, 10–12.)

---

[2]     Although the Complaint does not directly so state, the presentation of Plaintiff's independent polygraph result would presumably have been made to the SOTMP staff, not to the Defendant polygrapher(s).

The specific personal acts and activities of the Polygrapher Defendants given the presumption of truth at this juncture[3] which Plaintiff alleges caused him constitutional injury in connection with his Section 1983 claims, are that: 1) Plaintiff entered into a contract at Arrowhead Correctional Center in Cañon City, Colorado to participate in the Sex Offender Treatment and Monitoring Program which required Plaintiff to submit to polygraph examinations (*id.* at 5); 2) "all polygraphs conducted as part of the SOTMP are administered by Amich & Jenks" (*id.*); 3) on December 21, 2007, Defendant Schmidt administered a "specific issue" polygraph examination to Plaintiff  (*id.*); 4) on January 10, 2008 and May 16, 2008, Defendant Sheely administered control question polygraph examinations to Plaintiff (*id.* at 6); 5) on March 20, 2008, Defendant Jenks administered a control question polygraph examination to Plaintiff (*id.*); 5) on May 16, 2008, Defendant Sheely administered a "maintenance" polygraph to Plaintiff (*id.*); 6) the Polygraph Defendants collectively "refuse[d] to allow individuals to examine their own polygraph test results as a matter of policy" (*id.* at 9); and, 7) "Defendants [presumptively all of the defendants including the Polygraph Defendants] are aware of the polygraph's fallibility and yet choose to continue to use it" (*id*. at 11)[4].  There is no factual assertion that the results of any of the polygraphs were incorrect or that the procedure in administering the tests on the Plaintiff by the Polygraph Defendants was flawed or deliberately

---

[3] Mere "legal conclusions, bare assertions, or merely conclusory allegations" such as "Defendants . . .attempted to elicit a confession from Plaintiff" are not given a presumption of truthfulness when examining a Motion to Dismiss.  *Iqbal* at 1949–51.

[4] This "factual assertion" is actually more akin to a conclusory statement, however, for purposes of this review the court will consider the statement on its face.

6

manipulated by the Polygraph Defendants, other than the general assertion that polygraph examinations are inadmissible in court and Plaintiff's conclusion that polygraph examinations in general are fallible although they were apparently not faulty in their administration to Plaintiff in this case.

Plaintiff seeks punitive damages from Defendants Jenks, Sheely and Schmidt in the amount of $50,000, and from Defendant Amich & Jenks, Inc. in the amount of $250,000.  (*Id.* at 20.)  Plaintiff seeks declaratory relief from all defendants in the form of a declaration that "Defendants' polygraph policy and practice" violated Plaintiff's Fifth and Fourteenth Amendment rights, and that the "SOMB Lifetime Supervision Criteria [section] 4.200 is unconstitutional on its face."  (*Id.* at 19.)   Plaintiff further demands that the court order the "Defendants"[5]: 1) "to cease using the polygraph as a criterion for parole eligibility or a recommendation for parole;" 2) "to rewrite [the] Lifetime Supervision Criteria [section] 4.200;" 3) "to design and implement a system to provide individuals in SOTMP treatment with due process;" 4) "to cease terminating individuals from treatment for asserting their right against self-incrimination or refusing to take polygraph exams," or in the alternative, "to grant . . .

---

[5] Plaintiff's Complaint is directed against nine defendants, who may be regarded as comprising two separate groups: the State Defendants and the Polygraph Defendants.  Thus, Plaintiff's request for relief from "Defendants," without greater specificity, leaves open the question of from whom the relief is requested.  (Compl. at 19–20.)  However, reviewing Plaintiff's pleadings liberally, the court construes his use of "Defendants" in the "Request for Relief" section of the Complaint as referring to all named defendants, unless otherwise specified.

immunity to all individuals in SOTMP treatment for any potentially incriminating statements made to polygraphers or SOTMP staff" as injunctive relief. (*Id.* at 19–20.)

The Polygraph Defendants seek dismissal on the bases that the Plaintiff has failed to state a claim against these Defendants upon which relief can be granted, that the Polygraph Defendants were not state actors and were not acting under color of state law, and the Polygraph Defendants  were not the legal cause of Plaintiff's injury or injuries.[6]

## LEGAL STANDARD

### *1.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors*

---

[6]     Defendants also seek to incorporate the grounds for dismissal set forth in Defendants Prendergast, Heil, McCullar, Dunlap, and Tyler's Motion to Dismiss ([Doc. No. 25] [filed February 13, 2009]).  I find it unnecessary to reach these issues in the case of the Polygraph Defendants who are situated substantially dissimilarly to the other defendants, rendering this kind of global joinder inappropriate.

*of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**2.      *Fed. R. Civ. P. 12(b)(6) - Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two

9

prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.

Notwithstanding, the court "need not accept conclusory allegations without supporting factual averments."  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' "  *Iqbal*,129 S. Ct. at 1949 (citation omitted).

### *ANALYSIS*

#### A.    *Claims One, Two and Three*

In Claim One, Plaintiff asserts that his placement on "Notice" status without being afforded certain procedures during the polygraph examination constitutes a violation of his

procedural due process rights under the Fourteenth Amendment.  (Compl. at 7.)  Specifically,

Plaintiff asserts that he possesses "a protected liberty interest in successful progress in treatment

. . . [and that] [h]e is entitled to due process protections before he can be deemed to have failed to

successfully progress [in treatment]," i.e. placed on "Notice" status.  (*Id*. at 8.)  Plaintiff does not

claim that any of the Polygraph Defendants placed the Plaintiff on "Notice" status, specifically

stating, "[o]n January 2, 2008 Plaintiff was informed by his STOMP therapist that his polygraph

was 'deceptive', and the SOTMP staff placed him on 'Notice' status in treatment."  (*Id.*,

emphasis added.)  There is no claim that the Polygraph Defendants are part of the STOMP staff

for any purpose.

       In Claim Two, Plaintiff claims that "Defendants . . . deprived him of [parole eligibility] in

a manner shocking to the conscience in violation of [his] right to substantive due process."  (*Id.*

at 10.)  Specifically, Plaintiff claims that his placement on "Notice" status based on the results of

an allegedly "unreliable, [and] highly prejudicial" polygraph technique violates his right to

substantive due process.  (*Id.* at 10–12.)

       In Claim Three, Plaintiff claims that "by conditioning parole eligibility on 'non-

deceptive' polygraph results, Defendants compel[led] Plaintiff to disclose potentially self-

incriminating information in violation of his [Fifth Amendment] rights."  (*Id*. at 13.)  This claim,

of course, carries an inference – even when construed in the light most favorable to the Plaintiff

– that the Plaintiff believed he had a choice between being truthful to the polygraph examiner(s)

and admitting commission of a crime, or being deceptive in connection with the polygraph tests

in order to preserve and protect his Fifth Amendment rights.  Again, this Claim on its face

implies that the accuracy of the results of the polygraph tests administered by the Polygraph

Defendants is not in question; the issues in the case involve the requirement contained in the

treatment program protocols that the sex offender take a polygraph test and that the offender pass

the polygraph test with non-deceptive responses, all without a safeguard against the use of

information obtained in the mandatory polygraph examination process to prosecute an offender

for a new crime.[7]

### 1.    State Action

"In order to state a 42 U.S.C. § 1983 claim, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *B.Willis, C.P.A., Inc. v.

BNSF Ry. Corp.*, 531 F.3d 1282, 1305 n .27 (10th Cir. 2008).  *See also  Parratt v. Taylor,* 451

U.S. 527, 535 (1981) (overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327,

331–32 (1986)) (two essential elements to a § 1983 action are, 1) conduct committed by a person

acting under color of state law, and 2) a deprivation of constitutional rights as a result.)

Because the Polygraph Defendants, including the corporate entity, are private actors, this

court must first determine whether they nevertheless acted "under color of law" for purposes of

42 U.S.C. § 1983.  Liability cannot attach unless the actions of the private parties rise to the level

---

[7]  To the extent Plaintiff seeks to invalidate a contract he signed releasing Amich &
Jenks, Inc.'s from liability related to its administration of polygraph examinations on the basis of
duress, the court finds that such a claim does not allege the violation of a constitutional or
federally protected right and is therefore not cognizable under section 1983.  (*See* Compl. at
13–16.)

of state action.  *General Steel Domestic Sales, LLC v. Denver/Boulder Better Business Bureau*, 2009 WL 535780, *9 -10  (D. Colo. 2009) (J. Ebel sitting by designation); *see, e.g., Darr v. Town of Telluride*, 495 F.3d 1243, 1256 (10th Cir. 2007).  The only proper defendants in a Section 1983 claim "are those who represent [the state] in some capacity, whether they act in accordance with their authority or misuse it."  *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1442, 1446 (10th Cir.1995).

As noted by Judge Ebel, "[a]pplication of the state-action doctrine "frequently admits of no easy answer." "  *General Steel Domestic Sales* at *9 - 10 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)).  The Supreme Court has articulated four different tests for determining whether a private party's actions are "fairly attributable" to the state.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928, 937 (1982).  In all the tests for state action, the required inquiry is fact-specific.  *Gallagher* at 1448. The Supreme Court has not clearly stated "[w]hether these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in such a situation."  *Lugar*, 457 U.S. at 939.

In applying the four tests for state action, the Supreme Court has established a number of important general principles.  First, the existence of governmental regulation of a private entity, standing alone, does not provide the required nexus between government and private party action.  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Jackson*, 419 U.S. at 350. Similarly, the fact that a private entity contracts with the government to provide services or products or receives governmental funds or other kinds of governmental assistance does not automatically

13

transform the conduct of that entity into state action.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 840

- 42 (1982); *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522,

544 (1987) ("The Government may subsidize private entities without assuming constitutional

responsibility for their actions."). Finally, "[m]ere approval of or acquiescence in the initiatives"

of a private party is not sufficient to justify holding the State responsible for those initiatives.

*Blum* at 1004-05.

  The first state action test considers "whether there is a sufficiently close nexus between

the State and the challenged action of the regulated entity so that the action of the latter may be

fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351.  Under this approach, a state

normally can be held responsible for a private decision "only when it has exercised coercive

power or has provided such significant encouragement, either overt or covert, that the choice

must in law be deemed to be that of the State." *Blum*,  457 U.S. at 1004. The test insures that the

State will be held liable for constitutional violations only if it is responsible for the specific

conduct of which the plaintiff complains. *Id*.  In this case the Plaintiff alleges that the State

Defendants, including Prendergast, Heil, McCullar, Dunlap, and Tyler who are unquestionably

state actors, were the parties placing him on "Notice" status; the allegations against the

Polygraph Defendants are only that they were hired by some unspecified state entity to

administer polygraph tests if requested to do so and to report on the results of the tests.  There is

no allegation that the state or any state agency exercised any coercive control over the Polygraph

Defendants or that the Polygraph Defendants were asked to do anything other administer a test to

the Plaintiff and accurately report the results.  Therefore, the Polygraph Defendants cannot be held as state actors pursuant to the nexus test.

The second test set forth by the Supreme Court analyzes whether "the state has 'so far insinuated itself into a position of interdependence" with a private party that there is a symbiotic relationship between them.  *Gallagher*, 49 F.3d at 1447 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972).  The essence of a symbiotic relationship is some sort of interdependence between the private entity and the government body.  *Burton*, 365 U.S. at 725.  There is no bright-line rule for determining whether a symbiotic relationship exists between a government agency and a private entity, however there is no allegation in this case of any kind that the State has insinuated itself into the operations of the Defendant corporation or its employees at all.  According to the Plaintiff's allegations, the polygraphers merely perform a service for the state; they administer polygraph examinations and interpret the results.  As noted, payment for services provided to a government agency or department is generally insufficient to establish a symbiotic relationship between the government and a private entity.  *See Gallagher* at 1453;  *Rendell-Baker*, 457 U.S. at 830; *Browns v. Mitchell*, 409 F.2d 593, 595 - 96 (10th Cir. 1969).  There is no allegation that the state insists on any particular result to be achieved from the polygraph examinations, and no allegation in this case that the polygraph examination results were in error.  In fact the insinuation from the charges in the Complaint is that the results of "deception" as to the four polygraph examinations administered to the Plaintiff were correct; Plaintiff states that he declined to forfeit his rights under the Fifth Amendment.  In this case I can find no symbiotic

relationship between Amich & Jenks or any of the three individual polygraphers with any state

entity or any of the co-defendant state actors.

 The third test is satisfied if a private party is "a willful participant in joint activity with

the State or its agents." *Gallagher*, 49 F.3d at 1447 (quoting *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 152 (1970)).  Unlike the symbiotic relationship inquiry, the focus of this test is not on

long-term interdependence between the state and a private entity but instead whether state

officials and private parties have acted in concert in effecting a particular deprivation of

constitutional rights.  *Id.*  This test is sometimes employed in cases involving allegations that

private citizens acted in concert with police officers in making arrests, for instance.  *See Carey*

*v. Continental Airlines Inc.*, 823 F.2d 1402 (10th Cir. 1987); *Lee v. Town of Estes Park*, 820 F.2d

1112 (10th Cir. 1987).  In applying the joint action test, the Tenth Circuit has approved adopting

the requirements for establishing a conspiracy under Section 1983. *Gallagher* at 1447.  To prove

a conspiracy between private parties and the state under Section 1983, the plaintiff must show a

joint participation, agreement, or "meeting of the minds" to violate constitutional rights.  *Aly v.*

*Rocky Mountain Holding, L.L.C.*, 203 F.3d 834, 2000 WL 18878, *4 (10th Cir. 2000); *Adickes* at

152.  There is no allegation by Plaintiff that the Polygraph Defendants had any input whatsoever

in the decision to place Plaintiff on "Notice" status as a result of his failure to pass the polygraph

examinations without a deceptive reading.  It is the placing of the Plaintiff on "Notice" status

that Plaintiff alleges caused and continues to cause  him constitutional harm.  Therefore, I find

that no conspiracy between the Polygraph Defendants and any state or government actor has

been alleged and the private parties cannot be held to be state actors under this analysis either.

Lastly, a finding of state action can be made if a private party exercises "powers traditionally exclusively reserved to the State. *Jackson*, 419 U.S. at 352. This test has proved difficult to satisfy. "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (quoting *Jackson*, 419 U.S. at 356). The Supreme Court has found only a few functions to satisfy this test including administering elections of public officials, *Terry v. Adams*, 345 U.S. 461, 468 - 70 (1953), the operation of a company-owned town, *Marsh v. Alabama*, 326 U.S. 501, 505 - 09 (1946) and the management of a city park, *Evans v. Newton*, 382 U.S. 296, 298 - 302 (1966). It cannot be seriously argued that administration of a non-invasive test to an inmate who has specifically contractually agreed to such a test is an exclusive government function. Therefore, the private parties in this case cannot be held to be state actors under this test.

### 2.     *Personal Participation*

Closely tied to whether a claim for relief establishes state action on the part of a defendant, is the inquiry of whether the claim actually establishes <u>any</u> action on the part of a defendant. Along with the requirement of state actors and state action, personal participation is also an essential allegation in a section 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–63. To establish personal individual liability, a plaintiff must show that a defendant personally took action to cause the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's personal participation, control or direction, or failure to supervise. *See*

*Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  "Because vicarious liability is

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."  *Iqbal*, 129 S.Ct. at

1948.

"Courts should look to the specific allegations in the complaint to determine whether

they plausibly support a legal claim for relief."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210,

1215 n.2 (10th Cir. 2007).  "[T]o state a claim in federal court, a complaint must explain what

each defendant did to him or her; when the defendant did it; how the defendant's action harmed

him or her, and what specific legal right the plaintiff believes the defendant violated."  *Nasious*

*v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

At the crux of Claims One, Two and Three is Plaintiff's claim that he was placed on

"Notice" status; a placement which he claims rendered him ineligible for parole.  (*Id.* at 7–9.)

However, the Complaint is devoid of a single allegation that any of the Polygraph Defendants

played any role whatsoever in the decision, or had the authority, to place him on "Notice" status

or revoke his parole eligibility.  The only allegations against the Polygraph Defendants are that

they administered tests to the Plaintiff in connection with work they performed for the prison

system.[8]  Indeed, the January 4, 2008 letter, attached to Plaintiff's Complaint, notifying him of

his placement on "Notice" status states that it was sent from the "SOTMP Team" and does not

mention any of the Polygraph Defendants.  (*Id.*, Ex. C.)  This letter and the factual allegations

---

[8]      It is unknown whether the corporate entity had a contract with the state or the
Department of Corrections or whether the work was done on a piecemeal, as needed basis.

throughout the Complaint make it clear that the Polygraph Defendants' only role in these events was that of professional polygraph examiners who independently administered a test at the request of the prison and  interpreted Plaintiff's test results.  There is no allegation that this interpretation was in any way biased, and, in fact, there is no allegation that the test results were wrong.  It is undisputed that "the SOTMP staff" made the decision to place Plaintiff on "Notice" status.  It is the placement on "Notice" status that the Plaintiff alleges deprived him of parole eligibility and therefore deprived him of various constitutional rights.

Presuming all of Plaintiff's factual allegations against the Polygraph Defendants as true and construing them in the light most favorable to the plaintiff,  *Hall v. Bellmon*, 935 F.2d at 1198, his failure to allege their personal participation in the decision to place him on "Notice" status is fatal to Claims One, Two and Three.

Therefore, based on the fact that no state action or action under of color of state law has been alleged with respect to the non-state-actor Polygraph Defendants and no personal participation in any deprivation of constitutional rights has been alleged against the Polygraph Defendants, the Plaintiff has failed to state a plausible claim for relief against these defendants. Accordingly, this court recommends that Defendants Amich & Jenks, Inc., Jenks, Sheely and Schmidt be dismissed, in their individual and official capacities, as to Claims One, Two and Three.

### B.     Claim Four

Plaintiff's Claim Four presents an equal protection challenge to the Colorado Sex
Offender Lifetime Supervision Act of 1998, under which Plaintiff alleges he was sentenced, and
the "SOMB Lifetime Supervision Criteria [section] 4.200." (*Id.* at 17.)   "The equal protection
clause provides that '[n]o state shall . . .deny to any person within its jurisdiction the equal
protection of the laws.'"  *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643,
659 (10th Cir. 2006) (quoting U.S. Const. amend. XIV, § 1).  "Equal protection 'is essentially a
direction that all persons similarly situated should be treated alike.'"  *Id.* (quoting *City of
Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

Plaintiff claims that, unlike all other inmates in the custody of the CDOC, the parole
eligibility of inmates sentenced under the Sex Offender Lifetime Supervision Act of 1998 is
conditioned upon the results of polygraph examinations.  (*Id.*)  Plaintiff states that this "violates
*ipso facto* the due process and Fifth Amendment rights of everyone sentenced under the 1998
Act." (*Id.*)   Because of this inequity, Plaintiff is seeking declaratory relief and injunctive relief
with respect to these alleged violations.

Regardless of the relief sought by the Plaintiff, however, Section 1983 nevertheless
requires state action, state actors and personal participation just like any claim for damages and
irrespective of the capacity under which defendants are sued.  Plaintiff has failed to state even a
single factual allegation against any of the Polygraph Defendants in connection with this claim.
Once again, then, based on the fact that no state action or action under of color of state law has
been alleged with respect to the non-state-actor Polygraph Defendants and no personal

20

participation in any deprivation of Plaintiff's equal protection rights has been alleged against the Polygraph Defendants, the Plaintiff has failed to state a claim upon which relief can be granted as to Defendants Amich & Jenks, Inc., Jenks, Sheely and Schmidt in any capacity.  Accordingly, this court recommends that Defendants Amich & Jenks, Inc., Jenks, Sheely and Schmidt be dismissed in all capacities as to Claim Four.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that the "Motion to Dismiss Defendants Amich & Jenks, Inc., Jeffrey Jenks, Tom Sheely and Corey Schmidt" [Doc. No. 28] be **GRANTED** and that these defendants be dismissed, in all capacities as to all claims, with prejudice.

**NOTICE:  Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and**

recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *Int'l Surplus Lines Ins, Co. v. Wyo. Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 10th day of July, 2009.

**BY THE COURT:**

_____
Kathleen M. Tafoya
United States Magistrate Judge

22