IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08–cv–02182–PAB–KMT

JEREMY J. LOYD,

      Plaintiff,

v.

PAUL PRENDERGAST, individually and in his official capacity as SOMB Board Chair,
PEGGY HEIL, individually and in her official capacity as Chief of Rehabilitation Programs,
BURL McCULLAR, individually and in his official capacity as Sex Offender Treatment
Program Manager,
SAMUEL DUNLAP, individually and in his official capacity as SOTMP Phase II Program
Coordinator,
CHRISTINE TYLER, individually and in her official capacity as SOTMP Therapist,
AMICH & JENKS, INC., a Colorado corporation,
JEFFREY JENKS, individually and in his official capacity as Polygrapher and Partner, Amich &
Jenks, Inc.,
TOM SHEELY, individually and in his official capacity as Polygrapher, Amich & Jenks, Inc.,
and
COREY SCHMIDT, individually and in his official capacity as Polygrapher, Amich & Jenks,
Inc.,

      Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This case involves claims that Defendants violated Plaintiff's rights under the Fifth and

Fourteenth Amendments.   Jurisdiction is premised upon 42 U.S.C. § 1983 (2008).  This matter

is before the court on the "Motion to Dismiss" ([Doc. No. 25] [filed February 13, 2009]

[hereinafter "Mot."]) filed by Defendants Paul Prendergast, Peggy Heil, Burl McCullar, Samuel Dunlap, and Christine Tyler.[1]

Plaintiff filed his "Response to State Defendants' Motion to Dismiss and Brief in Opposition" on April 3, 2009. ([Doc. No. 39] [hereinafter "Resp."].) State Defendants filed their "Reply in Support of Motion to Dismiss" on April 15, 2009. ([Doc. No. 43][hereinafter "Reply"].) This motion is ripe for review and recommendation.

## STATEMENT OF FACTS

The following facts are taken from Plaintiff's Prisoner Complaint and the parties' submissions with respect to this Recommendation. Plaintiff is an inmate in the custody of the Colorado Department of Corrections (hereinafter "CDOC"). (Compl. at 5.) In 2002, Plaintiff pleaded guilty to sexual assault on a child and was sentenced to ten years to life on probation. (*Id.*) After his probation was revoked in May 2003, Plaintiff states that he was sentenced to a minimum sentence of two years to lifetime imprisonment. (*Id.*; *see also* Ex. E at 1.) Plaintiff claims that in 2006 he "signed a 'Phase II T.C. Contract' in order to participate in the Sex Offender Treatment and Monitoring Program (hereinafter "SOTMP") Therapeutic Community . . . located at Arrowhead Correctional Center in Cañon City, Colorado." (*Id.* at 5; *see* Ex. D.)

Plaintiff claims Defendant Paul Prendergast (hereinafter "Prendergast") was the chairman of the Colorado Sex Offender Management Board (hereinafter "SOMB") during the time period relevant to this litigation. (*Id.* at 2.) Plaintiff claims the SOMB sets forth the criteria used by SOTMP staff to determine whether an inmate has "successfully progressed" through the

---

[1] Hereinafter, Defendants Prendergast, Heil, McCullar, Dunlap and Tyler shall be referred to collectively as the "State Defendants," where appropriate.

2

treatment program.  This determination is a factor the SOTMP staff uses in assessing whether to recommend the inmate for parole.  (*Id.* at 8–9.)  One such criterion, according to the "Criteria for Successful Progress in Treatment in Prison," is that sex offenders must have completed non-deceptive polygraph assessments in order to receive a positive recommendation for parole.  (*Id.* at 7; *see* Ex. B.)  Moreover, Plaintiff claims that upon entering SOTMP he "waive[d] all his rights to confidentiality with regard to any criminal behavior he might disclose during treatment," including the required polygraph examinations.  (*Id.*; *see* Ex. D.)  Plaintiff states that "DOC employees are required to report [criminal offenses disclosed in response to polygraph examiners' questions] . . . to the proper authorities under Colorado law."  (*Id.* at 15.)

Plaintiff claims Defendant Peggy Heil (hereinafter "Heil") was the Chief of Rehabilitation Programs with the CDOC during the time period relevant to this litigation,  (*id.* at 2), that Defendant Burl McCullar (hereinafter "McCullar") was the SOTMP Manager, that Defendant Samuel Dunlap (hereinafter "Dunlap") was the "SOTMP Phase II Program Coordinator" and that Defendant Christine Tyler (hereinafter "Tyler") was a SOTMP "Senior Therapist" during this time.  (*Id.* at 3.)  Plaintiff claims that  Defendants Heil, McCullar, Dunlap, and Tyler were "administrators and supervisors responsible for the policies, procedures, and daily operations of the SOTMP." (*Id.* at 8.)

Plaintiff claims that as part of his treatment through the SOTMP, he was required to submit to polygraph examinations.  (*Id.* at 5–6; Ex. D at 2.)  Plaintiff claims he submitted to his first polygraph examination on December 21, 2007 and between January 2008 and May 2008, he submitted to three more polygraph examinations.  (*Id.* at 3–6.)  All but the last polygraph, according to Plaintiff, concerned an allegation that Plaintiff had exposed himself to another

3

inmate, a crime for which plaintiff had not been charged.  (*Id.*)  Through the multiple polygraph examinations, Plaintiff states, "[d]efendants . . . attempted to compel [him] to disclose potentially incriminating information."  (*Id*. at 15, 16; Ex. C at 2.)  Plaintiff does not set forth specific facts as to how this was accomplished.  However, Plaintiff claims he faced "the threat of indefinite parole ineligibility" if he refused to disclose incriminating information.[2]  (*Id*. at 15.)

On January 4, 2008, the SOTMP staff provided Plaintiff with a letter notifying him that his "general emotional responses" to questions during the December 2007 polygraph examination regarding the allegation that he had exposed himself to another inmate, were "indicative of deception."  (*Id.*, Ex. C at 1–2.)  As a result, Plaintiff was placed on "Notice" because, according to SOTMP staff, the "deceptive" results indicated that he was "not making sufficient progress in treatment."  (*Id.*)  Plaintiff was informed that the "notice period [would] be reviewed in 30 days [or] . . . continue until [he chose] to be honest and clear up [his] polygraph." (*Id.*)  SOTMP staff explained that placement on "Notice" had the following consequences: loss of all privileges, a recommendation that he lose two days of earned time per calendar month, a "G.P. Ban," placement in a support team, ineligibility for a work bonus, a requirement that he contact his "support network" to inform them of his lack of progress in treatment, the loss of appliance privileges, a requirement that he request a "Big Brother" for support while on "Notice", ineligibility for a positive recommendation for parole or community corrections for six months after being removed from "Notice," and a community service requirement of two hours

---

[2] Plaintiff relies on *Beebe v. Stommel,* 02–cv–01993–WYD–BNB, *Findings of Fact and Conclusions of Law* (Doc. # 163, issued November 13, 2006), for the proposition that his placement on "Notice" effectively made him ineligible for parole.  (*Id.* at 7–9.)

per month.  (*Id.* at 2.)  SOTMP staff warned Plaintiff that he faced the possibility of suspension, and eventual termination from the program if he failed to make sufficient progress in clearing up his polygraph.  (*Id.*, Ex. C at 1–2.)  Plaintiff also claims that his appearance before the parole board in April 2008 was set back 60 days, and subsequently deferred another ten months because he was placed on "Notice."  (*Id.* at 9; *see also* Ex. E.)

Plaintiff claims that SOTMP Staff[3] did not provide him with "advance written notice of the charges respecting the 'deceptive' polygraph, . . . a hearing, . . . an opportunity to present a defense, . . . an opportunity to examine or rebut the 'evidence' against him, . . . to call witnesses or to present documentary evidence in his defense."  (*Id.* at 9.)  After the examinations, Plaintiff claims that the "[polygraph examiners] refuse[d] to allow [him] to examine [his] own polygraph results," or to "present the findings of an independent polygrapher."  (*Id.* at 9.)  In Claim One, Plaintiff claims that his placement on "Notice" without these procedures constitutes a violation of his procedural due process rights under the Fourteenth Amendment.  (*Id.* at 7.)  Specifically, Plaintiff asserts that he possesses "a protected liberty interest in successful progress in treatment . . . [and that] [h]e is entitled to due process protections before he can be deemed to have failed to successfully progress [in treatment]," i.e. be placed on "Notice."  (*Id.* at 8.)

In Claim Two, Plaintiff claims that "Defendants . . . deprived him of [parole eligibility] in a manner shocking to the conscience in violation of [his] right to substantive due process."  (*Id.* at 10.)  Plaintiff claims that the State Defendants authorized the use of "control question technique polygraph[s]," which Plaintiff claims are "unreliable [and] highly prejudicial."  (*Id.* at 10–11.)  Plaintiff states that Defendant Heil "implemented" the policies whose procedures

_____

[3] Membership in "staff" is unspecified.

caused the deprivation of Plaintiff's "parole eligibility based solely on 'deceptive' polygraph results." (*Id.* at 2, 10.)  Plaintiff claims that these actions constitute a violation of his substantive due process rights under the Fourteenth Amendment.  (*Id.* at 10–12.)

In Claim Three, Plaintiff claims that "by conditioning parole eligibility on 'non-deceptive' polygraph results, Defendants compel[led] Plaintiff to disclose potentially self-incriminating information in violation of his [Fifth Amendment] rights." (*Id.* at 13.)  This claim implies that the Plaintiff believed he had a choice between being truthful to the polygraph examiner(s) and admitting commission of a crime, or being deceptive in connection with the polygraph tests in order to preserve and protect his Fifth Amendment rights.

Examining Claim Three and the whole of the Complaint, it is apparent that Plaintiff does not allege the results of the polygraph tests administered were false or inaccurate.  The issues in the case involve, instead, the requirement contained in the treatment program protocols that a sex offender in the SOTMP take a polygraph test and that the offender pass the polygraph test with non-deceptive responses, all without an immunity or confidentiality safeguard against the use of information obtained in the course of the examination for future prosecution or punishment.

In Claim Four, Plaintiff alleges that the "SOMB Lifetime Supervision Criteria [section] 4.200 is unconstitutional on its face." (*Id.* at 19.)  Plaintiff further alleges,  "Defendant Prendergast and the SOMB . . .violate[] ipso facto the due process and Fifth Amendment rights of everyone sentenced under the 1998 Act."[1]   In addition to seeking declaratory relief holding Section 4.200 unconstitutional, the Plaintiff seeks the following injunctive relief: 1) "to cease using the polygraph as a criterion for parole eligibility or a recommendation for parole;" 2) "to

---

[1] Sex Offender Lifetime Supervision Act of 1998.

rewrite [the] Lifetime Supervision Criteria [section] 4.200;" 3) "to design and implement a system to provide individuals in SOTMP treatment with due process;"and 4) "to cease terminating individuals from treatment for asserting their right against self-incrimination or refusing to take polygraph exams," or in the alternative, "to grant . . . immunity to all individuals in SOTMP treatment for any potentially incriminating statements made to polygraphers or SOTMP staff." (*Id.* at 19–20.)

Plaintiff seeks punitive damages from Defendants Prendergast, Heil, McCullar, Dunlap and Tyler in their official and individual capacities in Claims One, Two and Three. (*Id.* at 19.) Plaintiff also seeks retrospective declaratory relief with respect to Claims One, Two and Three, against the same Defendants to, "[d]eclare that Defendant's polygraph policy and practice has violated Plaintiff's rights to procedural and substantive due process and to be free from compelled self incrimination under U.S. Const. amends. V and XIV." (*Id.* at 18.) As noted, Claim Four seeks prospective declaratory and injunctive relief.

State Defendants seek dismissal on the following grounds: 1) they are entitled to absolute immunity under the Eleventh Amendment; 2) to the extent the Complaint seeks declaratory relief for past violations of constitutional rights, those claims are also barred by the Eleventh Amendment; 3) Plaintiff failed to allege the personal participation of any State Defendant in constitutionally prohibited activity; 4) Plaintiff failed to state a claim for violation of his procedural due process rights under the Fourteenth Amendment; 5) Plaintiff failed to state a claim for violation of his substantive due process rights; 6) Plaintiff failed to state a claim for violation of his Fifth Amendment privilege against self-incrimination; and 7) State Defendants are entitled to qualified immunity. (Mot.)

## LEGAL STANDARD

### A.      Pro Se Plaintiff

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.      Fed. R. Civ. P. 12(b)(6) - Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

8

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

The court "need not accept conclusory allegations without supporting factual averments." *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will

not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of 'entitlement to relief.'"  *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

## ANALYSIS

### A.   *Eleventh Amendment Immunity*

Section 1983 imposes civil liability upon any "person" who subjects another to a

constitutional deprivation.  42 U.S.C. § 1983.  Section 1983 provides a federal forum to remedy

many deprivations of civil liberties, but it does not provide a federal forum for every such

litigant.  It is well-established that "the Eleventh Amendment precludes a federal court from

assessing damages against state officials sued in their official capacities because such suits are in

essence suits against the state."  *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).  Absent

an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable

abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity

from suit in federal courts for states and their agencies for damages claims or retroactive

declaratory relief.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).

The Supreme Court has recognized an exception to the Eleventh Amendment for such

actions where a plaintiff is seeking prospective enforcement of federal rights.  *See Ex parte*

*Young*, 209 U.S. 123, 159–60 (1908); *Hunt v. Colo. Dept. of Corr.*, 271 Fed. App'x. 778 (10th

Cir. 2008).  The *Young* doctrine "permits federal courts to enjoin state officials to conform their

conduct to requirements of federal law, notwithstanding a direct and substantial impact on the

state treasury.  *Milliken v. Bradley,* 433 U.S. 267, 289 (1977).  The *Young* fiction was born of

necessity to enable the federal courts to ensure prospective compliance by the states with federal law.  But *Ex Parte Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages.  *Buchwald v. University of New Mexico School of Medicine*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

There has been no waiver of immunity by Colorado or its state agencies from suits for damages under Section 1983.  Therefore, the court finds that State Defendants Prendergast, Heil, McCullar, Dunlap, and Tyler are entitled to absolute sovereign immunity under the Eleventh Amendment in their official capacities on Claims One, Two and Three and to the extent any of Plaintiff's claims seek a declaration that Plaintiff's rights were violated in the past.

### B.      *Personal Participation of Defendants*

Personal participation is an essential allegation in a Section 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–63.  To establish personal individual liability, a plaintiff must show that a defendant <u>personally</u> took action to cause the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's personal participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.

"Courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210,

11

1215 n.2 (10th Cir. 2007). "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

At the crux of Claims One, Two and Three is Plaintiff's claim that he was placed on "Notice;" a placement which he claims rendered him ineligible for parole. (Compl. at 7–9.) The January 4, 2008 memorandum, attached to Plaintiff's Complaint, notifying him of his placement on "Notice" states that it was sent from the "SOTMP Team." (*Id.*, Exh. C.) The memorandum is signed by Plaintiff and Lana Lipeth,[1] LPC, whose signature appears on the line above the words, "Therapist Signature." (*Id.*) Therefore, the only person who is remotely identified as part of the SOTMP Team is Lana Lipeth who is not named as a Defendant in the case.

Plaintiff's descriptions of each of the State Defendants indicates he has named them as Defendants because he considers those individuals to be supervisory personnel. Defendant Prendergast is SOMB Board Chair, Heil is Chief of Rehabilitation Programs, McCullar is the Sex Offender Treatment Program Manager, Dunlap is the SOTMP Phase II Program Coordinator and Tyler is a Senior Therapist. Plaintiff states with respect to several of the Defendants, "[a]s administrators and supervisors responsible for the policies, procedures, and daily operation of the SOTMP, Defendants Heil, McCullar, Dunlap, and Tyler are responsible to ensure that Plaintiff is provided with [procedural due] process." (*Id.* at 8.) Further, he states, "[b]ased on the criteria

---

[1] The court is unsure of the proper spelling of the last name which is handwritten in longhand script.

established by Defendant Prendergast, the policies implemented by Defendant Heil, and the

procedures employed by Defendants McCullar, Dunlap and Tyler, the SOTMP has deprived

Plaintiff of parole eligibility . . . ."  (*Id.* at 10).

The Supreme Court has recently re-affirmed the death knell for vicarious liability in the

context of a Section 1983 claim:

> Government officials may not be held liable for the unconstitutional conduct of
> their subordinates under a theory of respondeat superior. ("[I]t is undisputed that
> supervisory *Bivens* liability cannot be established solely on a theory of respondeat
> superior "). *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658,
> 691, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978) (finding no vicarious liability for a
> municipal "person" under 42 U.S.C. § 1983); *see also Dunlop v. Munroe*, 7
> Cranch 242, 269, 3 L. Ed. 329 (1812) (a federal official's liability "will only
> result from his own neglect in not properly superintending the discharge" of his
> subordinates' duties); *Robertson v. Sichel*, 127 U.S. 507, 515-516, 8 S. Ct. 1286,
> 3 L. Ed. 203 (1888) ("A public officer or agent is not responsible for the
> misfeasances or position wrongs, or for the nonfeasances, or negligences, or
> omissions of duty, of the subagents or servants or other persons properly
> employed by or under him, in the discharge of his official duties"). Because
> vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead
> that each Government-official defendant, through the official's own individual
> actions, has violated the Constitution.

*Iqbal*, 129 S. Ct. at 1948.

The few so-called "factual" allegations against the Defendants by name in Claims One,

Two and Three are all fairly characterized as mere legal conclusion or bare assertions or merely

conclusory statements.  The only time Plaintiff uses the actual name of a State Defendant he

states, "Defendants McCullar, Dunlap and Tyler acted purposefully, with opportunity to

deliberate, as approximately three months elapsed between Plaintiff's first 'deceptive' polygraph

result and his originally scheduled parole hearing . . ." (id. at 10); "Defendants Prendergast, Heil,

McCullar, Dunlap, Tyler . . . have deprived Plaintiff of his liberty interest based solely on the

result of a 'control question technique' polygraph . . ." (id. at 11); "Defendants Heil, McCullar,

Dunlap and Tyler have enforced a policy ensuring Plaintiff's refusal to sign this 'contract' would result in automatic termination from treatment and ineligibility for parole" (id. at 13); "Defendants McCullar, Dunlap, Tyler . . . attempted to elicit a confession from Plaintiff . . ." (id. at 15); "Defendants Prendergast, Heil, McCullar, Dunlap, Tyler . . . have compelled and/or attempted to compel Plaintiff to disclose potentially incriminating information . . . ." (id. at 16). Other than these legal conclusions or conclusory statements, the Plaintiff wholly fails to set forth actual facts about what each individual defendant specifically did or did not directly do to him. None of these conclusory statements are "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1940. As the *Iqbal* Court observed:

> While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1940–41. There are no factual averments against Defendants Prendergast, Heil, McCullar or Dunlap which fit that definition; those defendants are therefore entitled to dismissal in their individual capacities on all claims in the Complaint because the Plaintiff has failed to state a claim against them upon which relief can be granted.

Only Defendant Tyler, listed as a SOTMP Therapist, could reasonably be considered to be part of the SOTMP "team" rather than a supervisor, but there are no specific factual allegations describing what she did to Plaintiff, when she did it or how her specific actions harmed or contributed to harm Plaintiff. In fact, the only SOTMP Therapist who appears from the Complaint to have any dealings directly with the Plaintiff was not named as a Defendant. So, as to Defendant Tyler as well, the Plaintiff has failed to state a claim against her in her individual capacity and all claims against her should be dismissed.

14

C.       *Qualified Immunity*

Given that Plaintiff has failed to allege any personal participation by the Defendants at all in Claims One, Two and Three, it is not necessary for the court to reach the issue of qualified immunity.  However, given the paucity of allegations against any of the State Defendants in their individual capacities, the doctrine is certainly applicable.

Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  When analyzing the issue of qualified immunity, the court must determine (1) whether the plaintiff has sufficiently alleged violation of a statutory or constitutional right; and (2) whether the right was clearly established at the time of the violation. *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009).

In this case, Plaintiff, having failed to specify what each defendant actually did to cause him harm, has not sufficiently alleged the violation of a statutory or constitutional right against these defendants.  Further, however, he has not set forth facts supporting the violation of a statutory or constitutional right against the State Defendants in their individual capacities, either.

1.       *Procedural Due Process*

The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property. *Chambers v. Colo. Dept. of Corrs.*, 205 F.3d 1237, 1242 (10th Cir.

2000) (quotations omitted).  To maintain his procedural due process claim, Plaintiff must prove

two elements: (1) that a recognized liberty or property interest has been interfered with one of

the State Defendants, and (2) that the procedures attendant to that deprivation were not

constitutionally sufficient.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460

(1989).

      Plaintiff asserts that he possesses "a protected liberty interest in successful progress in

treatment . . . [and that] [h]e is entitled to due process protections before he can be deemed to

have failed to successfully progress [in treatment]."  (Compl. at 8.)  Plaintiff bases his claim to a

liberty interest on *Beebe v. Heil*, Case No. 02-cv-01993-WYD-BNB (unpublished) (not reported

in Westlaw.)  In *Beebe*, the Plaintiff was a CDOC prisoner who was part of the SOTMP

Program.  Like Plaintiff herein, Beebe signed a contract agreeing to abide by the conditions of

the group treatment program.  Unlike Plaintiff herein, however, Beebe was summarily

terminated from the SOTMP program when one of the defendants came into possession of a

letter from a seventeen year old female to Beebe which indicated to the SOTMP therapists that

Beebe was having a prohibited relationship with a minor.  Without hearing or other process,

Plaintiff was terminated from the SOTMP program.  (*Id*. at 6.)  After a court trial, Chief Judge

Wiley Daniel, analyzing the Supreme Court case *Wolff v. McDonnell*, 418 U.S. 539, 572 (1974)

found that there were two tests for determining whether there is a protected liberty interest: 1)

where there is an atypical and significant hardship as compared with other inmates, or 2) where

there is a major change in conditions of confinement amounting to a grievous loss.  *Id*. at 17

(citing *Wolff* at 572 n.19.)  In the specific context of a prisoner participating in the SOTMP

program, the latter test was found to be applicable.  *Id*.  Therefore, in *Beebe*, because the Plaintiff

16

was actually terminated from the SOTMP program thereby becoming effectively ineligible for a positive parole recommendation, he had suffered a major change in conditions of confinement amounting to a grievous loss.  The court found under these circumstances that Plaintiff had a liberty interest in sex offender treatment.  *Id.* at 20.

Like *Beebe*, Plaintiff was part of a voluntary SOTMP program which operated under rules and regulations agreed to beforehand by Plaintiff when he entered into the program. Plaintiff agreed that he would "be required to take . . . polygraph examinations" as part of the "Therapeutic Community Treatment Contract" he signed on October 2, 2006.  (*Id.*, Ex. D at 2.) Therein, Plaintiff also agreed that "[i]n order to receive a positive recommendation for . . . parole, [he] must . . . have completed non-deceptive polygraph assessments on [his] deviant sexual history."  (*Id.* at 7.)  Plaintiff also agreed that his polygraph results may be given to the parole board.  (*Id.* at 8.)  Plaintiff agreed that treatment staff would monitor him to ensure compliance with the treatment contract and that they would terminate residents who failed to progress in treatment.  (*Id.* at 9.)

Very much unlike *Beebe*, however, Plaintiff in this case was not summarily terminated from the program for his violation(s) of protocol.  In fact, this court views being placed on "Notice" during a prisoner's SOTMP treatment as essentially a **warning** that treatment is not progressing as expected.  Important, also, is that Plaintiff was not placed on "Notice" in treatment for committing the disciplinary infraction of exposing himself to another inmate. Plaintiff was placed on "Notice" because he responded deceptively on a polygraph examination, *per se* failure to successfully progress in treatment.  (*See id.*, Ex. D at 2, 7.)  Plaintiff's liberty interest under *Beebe* – an interest in sex offender treatment – was not violated and as a result

17

Plaintiff was not entitled to the procedural due process protections.  *See Wolff v. McDonnell*, 418 U.S. 539 (1974).

Chief Judge Daniel did find that a SOTMP participant was entitled to a certain level of process "before termination."  *Beebe* at 26. Therefore, to the extent that being placed on "Notice" is an event that could occur prior to termination of the sex offender treatment program if the SOTMP participant does not alter the offending behavior, this court further finds that the procedures Plaintiff received were constitutionally sufficient.  First, Plaintiff received a letter on January 4, 2008 notifying him that SOTMP staff had placed him on "Notice" and explaining the grounds upon which this action was taken.  (Compl., Ex. C.)  The letter laid out the purpose and consequences his placement on "Notice," as well as its duration.  (*Id.*)  Therein, SOTMP staff also explained how he could be removed from "Notice."  (*Id.*)  Specifically, Plaintiff was informed that the "[n]otice period [would] continue until [he chose] to be honest and clear up [his] polygraph."  (*Id.* at 1.)  From January 10, 2008 until May 16, 2008, Plaintiff was afforded three opportunities to "clear up [his] polygraph," be removed from "Notice," and reacquire all the privileges he had lost.  Additionally, as noted *infra*, it is clear, based on the allegations of Claim Three, that Plaintiff knew he had a choice to make—either lie about his conduct and risk indicating deception on the polygraph and incurring the consequences thereof, or tell the truth and risk punishment for exposing himself to another inmate.  Plaintiff chose to provide deceptive responses to the three additional polygraph examinations he was afforded.

Since plaintiff has failed to allege the violation of a protected liberty interest or constitutionally inadequate procedures attendant thereto, the court finds that Plaintiff has failed to state a plausible procedural due process claim against the State Defendants in their individual

capacities.  Accordingly, each are entitled to the protections of qualified immunity on Claim

One.            *2.        Substantive Due Process*

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty,

or property, without due process of law."  U.S. Const. amend. XIV, § 1.  In addition to

guaranteeing fair process, the Clause "cover[s] a substantive sphere as well, barring certain

government actions regardless of the fairness of the procedures used to implement them."

*County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotation omitted).  "In its

substantive mode, the Fourteenth Amendment provides protection against arbitrary and

oppressive government action, even when taken to further a legitimate governmental objective."

*Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (citing *Lewis*, 523 U.S. at

845–46).

"The Supreme Court has described two strands of the substantive due process doctrine.

One strand protects an individual's fundamental liberty interests, while the other protects against

the exercise of governmental power that shocks the conscience."  *Id.* (citing *Chavez v. Martinez*,

538 U.S. 760, 787 (2003) (Stevens, J., concurring in part and dissenting in part) ("The Due

Process Clause of the Fourteenth Amendment protects individuals against state action that either

'shocks the conscience,' or interferes with [fundamental] rights 'implicit in the concept of

ordered liberty.'" (citations omitted))).

A fundamental right or liberty interest is one that is "deeply rooted in this Nation's

history and tradition" and "implicit in the concept of ordered liberty."  *Chavez*, 538 U.S. at 775.

Without these rights, "neither liberty nor justice would exist."  *Palko v. Connecticut*, 302 U.S.

319, 325 (1937) (overruled on other grounds).  "Because of their importance, fundamental

liberty interests are preciously guarded." *Seegmiller*, 528 F.3d at 767. "[T]he Fourteenth Amendment forbids the government to infringe fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotations, ellipsis omitted, and emphasis).

The other strand of the substantive due process doctrine protects against deliberate government action that is "arbitrary" and "unrestrained by the established principles of private right and distributive justice"—conduct that shocks the judicial conscience. *Lewis*, 523 U.S. at 845 (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884)). This strand of substantive due process is concerned with preventing government officials from "abusing their power, or employing it as an instrument of oppression." *Id.* (internal marks omitted). Not all governmental conduct is covered, however, as "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* By satisfying either the "fundamental right" or the "shocks the conscience" standards, a plaintiff states a valid substantive due process claim under the Fourteenth Amendment. "The 'shocks the conscience' and 'fundamental liberty' tests are but two separate approaches to analyzing governmental action under the Fourteenth Amendment." *Seegmiller*, 528 F.3d at 769.

Plaintiff claims that his placement on "Notice" by the State Defendants based "solely" on the results of an allegedly "unreliable, [and] highly prejudicial"[1] polygraph technique constitutes government conduct shocking to the judicial conscience and therefore violates his substantive

---

[1] Tellingly absent from Plaintiff's Complaint is an allegation that the four polygraph examinations he actually took were in any way inaccurate. Indeed, it appears that Plaintiff intentionally refused to answer truthfully for fear of incriminating himself. (Compl., Ex. C at 2.)

due process rights.  (Compl. at 10–12.)  Plaintiff, however, entered the SOTMP program voluntarily.  (*Id.*, Ex. D at 10.)  Upon entry, Plaintiff was aware that he would be required to submit to polygraph examinations, the results of which would be made available to the parole board.  (*Id.*, Ex. D at 2, 8.)  Importantly, Plaintiff was aware that "[i]n order to receive a positive recommendation for . . . parole, [he] must . . . have completed non-deceptive polygraph assessments on [his] deviant sexual history."  (*Id.*, Ex. D at 7.)  Had Plaintiff abided by the terms of his treatment program, he would have been eligible to receive a positive recommendation for parole despite being sentenced to two years to life in prison.  (*Id.*, Ex. E at 1.)  Even if Plaintiff's parole eligibility were denied as alleged, he would not have lost anything he was entitled to since "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Nebraska Penal and Correctional*, 442 U.S. 1, 7 (1979).

This court finds that Plaintiff has failed to allege the violation of a fundamental right and has further failed to cite to behavior or practices which shock the judicial conscience of this court.  Plaintiff has therefore failed to state a plausible claim for a violation of his substantive due process rights against the State Defendants, in their individual capacities, and they are entitled to the protections of qualified immunity on Claim Two.

### 3.    *Fifth Amendment Privilege against Self-Incrimination*

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  "The Self-Incrimination Clause of the Fifth Amendment is applicable to the States in its full text through the Due Process Clause of the Fourteenth Amendment."  *Chavez,* 538 U.S. at 790 (citing *Malloy v. Hogan*, 378 U.S. 1, 6

(1964)).  The Supreme Court has noted that "[t]he [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."  *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).  Furthermore, "a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself."  *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).  However, "the Fifth Amendment does not prohibit all penalties levied in response to a person's refusal to incriminate himself or herself—it prohibits only the compulsion of such testimony."  *McKune*, 536 U.S. at 49 (2002) (O'Connor, J., concurring).  "Not all pressure necessarily 'compel[s]' incriminating statements."  *Id.*

In *McKune*, a plurality of the Supreme Court concluded that the *Sandin v. Connor*[1] standard "should control in determining whether the imposition of [certain] consequences constituted impermissible compulsion."  *Wirsching v. Colorado*, 360 F.3d 1191, 1202 (10th Cir. 2004) (citing *McKune*, 536 U.S. at 29–48) (internal citations omitted).  "[I]f the consequences constituted 'atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life' then the program would violate the Fifth Amendment."  *Id.*  Justice O'Connor disagreed with the plurality's application of the atypical and significant hardship standard. *McKune*, 536 U.S. at 48.  However, Justice O'Connor nevertheless concurred in the judgment on the grounds that the consequences the *McKune* plaintiff faced for refusing to incriminate himself were not "so great as to constitute compulsion for the purposes of the Fifth Amendment privilege

_____

[1] 515 U.S. 472, 484 (1995).

against self-incrimination." *Id.* at 49–50. "Because Justice O'Connor based her conclusion on the narrower ground that the KDOC's policy was not compulsion under the Fifth Amendment, we view her concurrence as the holding of the Court in *McKune*." *Wirsching,* 360 F.3d at 1202 (quoting *Searcy v. Simmons*, 299 F.3d 1220, 1225 (10th Cir. 2002)). *See also Marks v. United States*, 430 U.S. 188, 193 (1977) (stating that the holding of a fragmented Court "may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds").

In *McKune,* the Supreme Court was presented with a Fifth Amendment challenge to the Kansas prison inmate Sexual Abuse Treatment Program (SATP) very similar to the one currently before this court. In that case, SATP–participating inmates were required to disclose prior sexual activities including uncharged criminal offenses, were subject to polygraph examinations and faced "the possibility that [the information they provided] . . . might be used against [them] in future criminal proceedings." *McKune*, 536 U.S. at 30. Holding that such a program did not violate the prisoners' Fifth Amendment privilege against self-incrimination, the Supreme Court observed that

> [s]ex offenders are a serious threat in this Nation . . . When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. . . . States thus have a vital interest in rehabilitating convicted sex offenders. . . . Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism. . . . An important component of those rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct. . . . Denial is generally regarded as a main impediment to successful therapy, and therapists depend on offenders' truthful descriptions of events leading to past offences in order to determine which behaviours need to be targeted in therapy. . . . The critical first step in the Kansas SATP, therefore, is acceptance of responsibility for past offenses. This gives inmates a basis to understand why they are being punished and to identify the traits that cause such a frightening and high risk of

> recidivism . . . . [For] participants to accept full responsibility for their past
> actions, they must accept the proposition that those actions carry consequences.

*Id.* at 32–34 (internal citations and quotations omitted).

In *Carroll v. Simmons*, the Tenth Circuit addressed a case in which the plaintiff's Fifth Amendment claim presented circumstances "virtually identical" to those in *McKune*. 89 Fed. App'x 658, 662 (10th Cir. 2004). The *Carroll* court observed that the "only notable distinction" between the two cases was that the "plaintiff, unlike the plaintiff in *McKune*, alleged that he had been denied good-time credits resulting in ineligibility for parole as a result of his refusal to admit guilt." *Id.* (emphasis added.) Despite the "notable distinction" of parole ineligibility, the Tenth Circuit nevertheless affirmed the lower court's dismissal of the plaintiff's Fifth Amendment claim. The *Carroll* court's holding was based on *Searcy v. Simmons*, 299 F.3d 1220, 1226–27 (10th Cir. 2002), which held that a "plaintiff's privilege against self-incrimination was not violated even though his refusal to make the admissions required for participation in a sexual-abuse-treatment program caused him to lose good-time credits." *Carroll*, 89 Fed. App'x at 662.

Plaintiff relies on *Beebe* for the proposition that his placement on "Notice" made him ineligible for parole. (Compl. at 13.) *See Beebe,* 02–cv–01993–WYD–BNB. The *Beebe* court found that <u>termination</u> from the SOTMP had the practical effect of making an inmate ineligible for parole. (*Id.* ¶ 20.) However, Plaintiff has not alleged that he was terminated from treatment and, in fact, Plaintiff states that he met with the parole board on May 28, 2008, four months after being placed on "Notice." (*Id.* at 6.)

Nevertheless, even if Plaintiff's contention that he was deprived of parole eligibility were accurate, he fails to state a claim. Like the *Carroll* plaintiff, the plaintiff here alleges that the

ultimate consequence of his refusal to incriminate himself was parole ineligibility.  The only distinction between the two cases is that the *Carroll* plaintiff's loss of good-time credits resulted in parole ineligibility, whereas here the plaintiff's placement on "Notice" allegedly caused his parole ineligibility.  However, the *Carroll* plaintiff's loss of good time credits resulting in parole ineligibility were insufficient to constitute compulsion.  Accordingly, the court finds that Plaintiff Loyd's placement on "Notice," even if resulting in parole ineligibility, is similarly insufficient to constitute compulsion.

Moreover, since [t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz*, 442 U.S. at 7, even if "Notice" effectively rendered him ineligible for parole, Plaintiff has not alleged the loss of anything he was entitled to.

For the aforementioned reasons, the court finds that the consequences Plaintiff faced for refusing to incriminate himself were not so great as to constitute compulsion for purposes of the Fifth Amendment.  Plaintiff's allegations fail to state a plausible claim for compulsion in violation of the Fifth Amendment against any of the State Defendants, even if the complaint had alleged sufficient factual allegations against them.  Therefore, the State Defendants are  entitled to the protection of qualified immunity on the Plaintiffs Claim Three.

### D.      Claim Four

The Court notes that Defendants' Motion to Dismiss does not address Count Four to the extent it seeks prospective declaratory and injunctive relief.  However, expediency and conservation of judicial resources compels the court to examine the four criteria which are essential to proceeding on a case pursuant to *Ex Parte Young*.   In order to press forward on a

claim under the *Young* doctrine,  (1) the Plaintiff must be suing a state official, rather than the

state itself; (2) the Plaintiff must allege a non-frivolous violation of federal law; (3) the Plaintiff

must seek prospective equitable relief, rather than retroactive monetary relief from the state

treasury; and (4) the suit must not implicate "special sovereignty interests."  *See Lewis v. New*

*Mexico Dept. of Health*, 261 F.3d 970, 975 (10th Cir. 2001) (referencing  *Idaho v. Coeur d'Alene*

*Tribe*, 521 U.S. 261, 296 (1997) and *Florida v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982).)

*See also Elephant Butte Irrigation District of New Mexico v. Department of the Interior,* 160

F.3d 602, 609 (10th Cir. 1998).

This Court finds first that  Plaintiff has properly alleged an "ongoing violation of federal

law" pursuant to *Ex Parte Young*, 209 U.S. 123 (1908). Further, Defendant Paul Prendergast

appears to be properly named as a state official who is responsible for enforcing the contested

procedures.[1] (See Complaint, Exh. E, statement on State of Colorado, Department of Corrections

letterhead, "Inmate Loyd is not meeting the criteria set by the Sex Offender Management Board"

of which Prendergast is alleged to be chairman.)  *See Greenawalt v. Ind. Dept. of Corr.*, 397 F.3d

587, 589 (7th Cir. 2005); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)

The Supreme Court has recognized, however, that a state official must act in violation of

federal law and therefore outside any delegated authority in order for plaintiffs to avoid dismissal

based on Eleventh Amendment immunity. *See, e.g., Larson v. Domestic & Foreign Commerce*

*Corp.*, 337 U.S. 682, 689–90 (1949), cited in *Elephant Butte*, 160 F.3d at 610. The question of

---

[1] To the extent Plaintiff was attempting to press this claim against any other Defendant named in the complaint, such Defendants would be superfluous in this context and should be dismissed.

whether state officials violated federal law therefore affects both the initial immunity inquiry and the court's ultimate decision on the merits. *Id*. at 690, n.10.

On his claims alleging violation of his procedural due process, substantive due process and Fifth Amendment rights, the Plaintiff has failed to set forth a valid claim upon which relief can be granted as more fully explained herein.

To the extent a claim for violation of equal protection lurks among the shadows of Claim Four, Plaintiff also fails to set forth a valid claim for relief. Plaintiff may be asserting that, unlike all other inmates in the custody of the CDOC, the parole eligibility of inmates sentenced under the Sex Offender Lifetime Supervision Act of 1998 is conditioned upon the results of polygraph examinations.

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Tenth Circuit has stated that "an equal protection violation occurs when the government treats someone differently than another who is similarly situated." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "Legislatures have wide discretion in passing laws that have the inevitable effect of treating some people differently from others." *Parham v. Hughes*, 441 U.S. 347, 351 (1979). "Unless a classification warrants some form of heightened review because it jeopardizes the exercise of a fundamental right or categorizes an individual on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Plaintiff has failed to allege membership in any constitutionally protected class or the infringement of a fundamental right.  Therefore, the classification about which Plaintiff grieves need only rationally further a legitimate state interest to be upheld. "Treating sex offenders differently than others not convicted of these crimes is rationally related to a legitimate state objective," and therefore does not violate the Equal Protection Clause. *Wirsching*, 360 F.3d at 1205.  *See also McKune,* 536 U.S. at 32–34.

Plaintiff has, therefore, not alleged a non-frivolous violation of federal law in connection with Claim Four.  He does not meet the four-point test to pursue his claims for declaratory and injunctive relief on the basis of *Ex Parte Young*.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that State Defendants' "Motion to Dismiss" [Doc. No. 25] be **GRANTED** and all claims against Defendants Paul Prendergast, Peggy Heil, Burl McCullar, Samuel Dunlap and Christine Tyler be **DISMISSED.**

**NOTICE:  Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73**

F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *Int'l Surplus Lines Ins, Co. v. Wyo. Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But  see,*

*Morales-Fernandez v. I.N.S.*, **418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does**

**not apply when the interests of justice require review).**

Dated this 16th day of July, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge

30